[No. 6260–1.   Division One.   May 29, 1979.]

ST. REGIS PAPER COMPANY, *Appellant,* v. VERNON
WICKLUND, ET AL, *Respondents.*

*Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn*
and *Richard A. Jessup,* for appellant.

*Newton, Newton & Kight* and *R. Michael Kight,* for
respondents.

DORE, J.—Plaintiff St. Regis Paper Company brought this action on a promissory note in the amount of $21,000 against defendant Vernon Wicklund, an individual. Defendant moved for reformation of the note alleging that the obligation was that of Wicklund Builders, Inc., and not his individual responsibility. The trial court granted judgment against Wicklund Builders, Inc., but exonerated Wicklund individually. Plaintiff appeals. We reverse.

## ISSUE

Did the trial court err in admitting, over objection, parol evidence to show the purported intention of Wicklund that he signed as a corporate officer for and on behalf of Wicklund Builders, Inc., and not individually?

## STATEMENT OF FACTS

Plaintiff St. Regis Paper Company, a retail and wholesale lumber company, had done business with defendant Vernon Wicklund, d/b/a Wicklund Builders, Inc., home builders, for a number of years on an open account basis. In late 1972 or early 1973, plaintiff's credit manager, Munger, contacted defendant and discussed the possibility of replacing the past–due amounts carried on an open account with a promissory note. Wicklund agreed to sign the promissory note. After some preliminary discussions by telephone, Munger and Wicklund met for the purpose of executing a promissory note for the past–due account. Munger brought with him a standard form promissory note and filled in the blank spaces with the amount, payee and other terms of payment. During the process of completing the blanks of the note, Munger wrote the words "Personal Guaranty" in a blank space in a paragraph referring to security for the note, later crossed the words out, and wrote his initials over the space and inserted the words "NONE." A photostat of the note, as ultimately completed and signed

by Wicklund without designation that he was signing in a representative or corporate capacity, is set forth below.

**PROMISSORY NOTE**

$28934.49 _____, _____ Jan 18 _____, 19 73

FOR VALUE RECEIVED without grace, I promise to pay to the order of _____ St Regis Paper Co _____

the principal sum of _____ Twenty Eight Thousand Nine hundred Thirty four and 49/100 _____

($28934.49/100) with interest thereon from date hereof at the rate of _____ per cent, per annum until maturity.

Said principal, together with interest as aforesaid, shall be paid in monthly payments as follows (such payments including interest): _____ ON DEMAND _____

($_____) or more

on the _____ day of _____, 19___, and a like sum on the _____ day of each and every month thereafter until the said principal sum, together with interest thereon, shall have been fully paid. Said principal and interest shall be paid in lawful money of the United States, and shall bear interest from maturity until paid at the rate of _____ 8% _____ per cent, per annum.

If default be made in the payment of this note, or any part thereof, or any interest thereon, then the principal sum with accrued interest shall at once become due and collectible without notice, time being of the essence of this contract, and said principal sum and interest shall bear interest from such default until paid at the rate of _____ 8% _____ per cent, per annum.

In case suit is instituted to collect this note or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable as attorney fees in such suit.

This note with interest is secured by a _____ Personal Guaranty NONE _____ mortgage of even date herewith executed and delivered by the makers hereof to the said payee conveying certain real estate described therein situate in _____ County, State of Washington.

This contract is to be construed in all respects and enforced according to the laws of the State of Washington.

X _____

PIONEER NATIONAL TITLE INSURANCE COMPANY                    FORM E168

At trial the defendant testified, over objection, that he discussed the note with Munger as a corporate obligation only.

Munger's testimony by deposition controverted Wicklund's statement that the words "Personal Guaranty" had been mistakenly written into the form. The defendant, on the other hand, testified that when he saw the words "Personal Guaranty," he objected and stated that he understood the note to be a corporate rather than a personal obligation, and because of his objection Munger struck out the words "Personal Guaranty."

The trial court, in holding that the note represented a corporate obligation and that defendant was not personally liable, held that the crossed-out words "Personal Guaranty" created an ambiguity and therefore parol evidence was admissible to explain the intent of the parties. The court reasoned that there was substantial dispute between

the parties in the testimony concerning the intention of the parties. The court found that plaintiff's witness Munger's explanation as to the use of the term "Personal Guaranty" was not as believable as that of the defendant, and entered findings and judgment that the note was a corporate obligation and that Wicklunds were not personally liable.

## DECISION

ISSUE 1: Trial court erred in admitting parol evidence as to intentions of parties.

There was no ambiguity in the promissory note signed by Wicklund and parol evidence, as to the intention of the parties, should have been excluded.

The promissory note executed by the parties is controlled by the Uniform Commercial Code as enacted by the State of Washington. The code specifically provides that a party cannot avoid the obligations in a note by submitting parol evidence to the effect that he did not intend to sign the note as the signature appears.

The Uniform Commercial Code, RCW 62A.3-403, and the cases which interpret that section, and the similar rule which applied prior to the adoption of the Uniform Commercial Code, prohibit the admission of parol evidence to vary the capacity in which an individual signed an instrument, unless some *ambiguity exists* with respect to the capacity in which a person signed the note, and this *ambiguity is apparent on the face of the instrument.*

RCW 62A.3-403, *Signature by authorized representative,* provides:

(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) *An authorized representative who signs his own name to an instrument*

(a) *is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;*

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

(Italics ours.) The official comments to the code, when discussing subsection 2, are set forth in the footnote.[1]

The provisions of RCW 62A.3–403(2)(a) and the official comments to that subsection control and direct that defendant Vernon Wicklund signed the subject promissory note in his personal capacity. The note names no other person or entity which he was representing in signing the

---

[1] "2. Subsection (2) applies only to the signature of a representative whose authority to sign for another is established. If he is not authorized his signature has the effect of an unauthorized signature (Section 3–404). Even though he is authorized the principal is not liable on the instrument, under the provisions (Section 3–401) relating to signatures, unless the instrument names him and clearly shows that the signature is made on his behalf.

"3. Assuming that Peter Pringle is a principal and Arthur Adams is his agent, an instrument might, for example, bear the following signatures affixed by the agent—

"(a) 'Peter Pringle', or
"(b) 'Arthur Adams', or
"(c) 'Peter Pringle by Arthur Adams, Agent', or
"(d) 'Arthur Adams, Agent', or
"(e) Peter Pringle
    Arthur Adams', or
"(f) 'Peter Pringle Corporation
    Arthur Adams'.

"A signature in form (a) does not bind Adams if authorized (sections 3–401 and 3–404).

"*A signature as in (b) personally obligates the agent and parol evidence is inadmissible under subsection (2)(a) to disestablish his obligation.*

"The unambiguous way to make the representation clear is to sign as in (c). Any other definite indication is sufficient, as where the instrument reads 'Peter Pringle promises to pay' and it is signed 'Arthur Adams, Agent.' Adams is not bound if he is authorized (Section 3–404)." (Italics ours.) Official Comments 2, 3, RCWA 62A.3–403.

note, nor is there any indication that he was signing in a representative capacity, and the note contains no ambiguity with relation to his signature or the capacity in which he signed which, under that section, allows the admission of parol evidence. Under RCW 62A.3–403, only an *ambiguity* in connection *with the form and style of the signature itself,* and not some *other part of the note,* will allow parol evidence of the capacity in which a signature was affixed. Official comment 2, quoted in footnote 1, states that a signature containing no reference to a principal but which is of an individual only, leaves no latitude for finding any ambiguity but binds the signer personally and bars the admission of any parol evidence. This case falls directly within RCW 62A.3–403(2)(a).

In *Leonard v. Washington Employers, Inc.,* 77 Wn.2d 271, 461 P.2d 538 (1969), the court refused to reform a formal pension plan document to read "years of service" rather than "years of credited service." The worker had claimed that the variation was due to a mistake. The president of the company had testified that the phrase at all stages of development of the plan contemplated the years of creditable service would be the yardstick by which vested rights would be measured. Appellant employee contended that such testimony violated the parol evidence rule and was irrelevant because it is evidence of subjective intent rather than a manifestation of objective intent.

The court brushed aside the objection that such testimony by the company president was a violation of the parol evidence rule and analyzed how the parol evidence rule operates where there is a request for reformation. On page 278 of the quoted case it is stated:

> In the first place, the parol evidence rule is not applicable in actions for reformation. *Akers v. Sinclair,* 37 Wn.2d 693, 226 P.2d 225 (1950); *Nadreau v. Meyerotto,* 35 Wn.2d 740, 215 P.2d 681 (1950). The reason is clear. The remedy of reformation is granted when necessary to conform a writing to correctly reflect the agreement actually reached by the parties. *Thorsteinson v. Waters,*

65 Wn.2d 739, 399 P.2d 510 (1965); *Tenco, Inc. v. Manning,* 59 Wn.2d 479, 368 P.2d 372 (1962); *McKelvie v. Hackney,* 58 Wn.2d 23, 360 P.2d 746 (1961). In order to determine whether there was a mutual understanding which preceded the writing, and if so, what the mutual understanding was, parol must be admitted before a court can pass upon the question of whether the writing should be reformed.

*Leonard v. Washington Employers, Inc., supra* at 278.

The rule applicable where reformation for mutual mistake is sought has been stated in Restatement of Contracts, as follows:

"Where both parties have an identical intention as to the terms to be embodied in a proposed written conveyance, assignment, contract or discharge, and a writing executed by them is materially at variance with that intention, either party can get a decree that the writing shall be reformed so that it shall express the intention of the parties, if innocent third persons will not be unfairly affected thereby." 2 Restatement of Contracts, 968, § 504.

This rule has long been followed in this state. See *Moeller v. Schultz,* 11 Wn. (2d) 416, 119 P. (2d) 660, and cases there cited; *Nadreau v. Meyerotto,* 35 Wn. (2d) 740, 215 P. (2d) 681. It extends to cases involving the reformation of negotiable instruments. *Union Machinery & Supply Co. v. Taylor–Morrison Logging Co.,* 143 Wash. 154, 254 Pac. 1094; 3 Pomeroy's Equity Jurisprudence (5th ed.), 395, § 871a; 45 Am. Jur. 596, Reformation of Instruments, § 25.

*Akers v. Sinclair,* 37 Wn.2d 693, 226 P.2d 225 (1950), at 702.

In *Akers v. Sinclair, supra* at 708, it was stated:

"One who executes a note in his own name, with nothing on the face of the note showing his agency, cannot introduce parol evidence to show that he executed it for a principal, or that the payee knew that he intended to execute it as agent." (p. 396) [*Moore v. Webster,* 191 Wash. 394, 71 P.2d 369 (1937).]

In the *Toon* case [*Toon v. McCaw,* 74 Wash. 335, 133 P. 469 (1913).], the court used the following language, which was quoted with approval in the relatively recent *Moore* case:

"There is no language in the note which raises even a slight ambiguity or creates any doubt as to the meaning of the instrument, or that remotely suggests that the makers were acting for another." (p. 337)

Not only is the instant case one in equity, for reformation, where the parol evidence rule is inapplicable, but the two Akers notes now under discussion did each contain the name of the corporation as the sole promisor.

In the subject case, although parol evidence is not permissible to vary the terms of a promissory note where there is no ambiguity, nonetheless parol evidence is admissible in such a case on the subject of reformation of such note. In his pleadings, defendant Wicklund asked the court to reform the promissory note to be a corporate obligation. To do this as requested, the promissory note would have to be reformed to show the signators as follows:

Wicklund Builders, Inc.

Vernon Wicklund, President

One seeking reformation of an instrument must prove by clear, cogent and convincing evidence (1) that both parties to the instrument had an identical intention as to the terms embodied in the proposed written document, (2) that the writing which was executed was materially at variance with that identical intention, and (3) innocent third parties will not be unfairly affected by reformation to the writing to be expressed of that identical intention. *Leonard v. Washington Employees, Inc., supra.*

Although Munger and Wicklund testified at cross purposes, Wicklund stating that the words "Personal Guaranty" were stricken out of the note at his request so he would not be personally liable, while Munger said the words were stricken out because they were mistakenly inserted and created a redundancy with the personal signing of Wicklund, nonetheless both men agree that "Personal Guaranty" was correctly stricken out of the note. The defendant Wicklund is completely satisfied with the wording of the note and wants no changes or reformation but

desires only to testify as to his interpretation of the wording of the promissory note. The record shows that defendant Wicklund twice testified as to the intentions of the parties in striking the words "Personal Guaranty" from the note.

Q Was there anything about the Note that created a problem when Mr. Munger handed it to you to sign?
A [Wicklund] Yes.
Q And what was that?
A Written on there he had "Personal Guarantee."
Q And why was that a problem?
A Well, I didn't want to be personally bound for the Note.
Q Did you express this to Mr. Munger?
A Yes. I had him cross it out.
Q What did you believe the effect of crossing that out was?
A That I personally wasn't bound for the Note. That the corporation was liable for it.

. . .

Q Would you have signed the Note if you had thought you were going to be personally bound?
A No.
Q What did you believe was the effect of striking the words "Personal Guarantee" from the Note?
A I wasn't personally bound for it.

Wicklund offered no evidence for reformation or language change in the note, and the court granted no reformation or language change, and entered no findings of fact or conclusions of law granting reformation. Instead, the court made findings of fact Nos. 5, 6, 7, 8, 9, 10 and 11 (interpreting the words of the note as written) finding Wicklund intended his personal signature on the subject note to be a corporate rather than a personal obligation. This, the trial court cannot do. The trial court was permitted to admit parol evidence on the issue of reformation but having found that both parties agreed with the language of the note as modified by striking the words "Personal Guaranty," it was prohibited under the parol evidence rule from considering such oral testimony of Wicklund to interpret

the language of the note. The trial court considered oral testimony on the basis that there was an ambiguity in the language of the note. We disagree and find there was no ambiguity in the note, as detailed earlier in this opinion, and it was error to use testimony of the parties to interpret the parties' intent, rather than the unambiguous words of the note.

Wicklund admittedly knew the difference between signing a document as president of Wicklund Builders, Inc., and as an individual, as illustrated by his trial testimony.

Q  Had you ever signed other documents for the company prior to this time?
A  [Wicklund] Oh, yes.
Q  What kind of documents?
A  *Lots of them*; mortgages, etc.
Q  Mortgages, etc.
A  *Well, mortgages and Deeds of Trust, and all kinds of things that go along with construction. Real estate transactions.*
Q  How would these documents be prepared?
A  Well, they would normally already be prepared with the name *Wicklund Builders, Inc., and then a space for my signature and then, "President" typed in.*

(Italics ours.)

Wicklund read the note before he signed it and apparently made no attempt to change it. He testified:

Q  Now, did you read this Note before you signed it?
A  Yes.

It is inconceivable that Wicklund, having been President of Wicklund Builders for a number of years and having signed many documents as President, did not realize that when he signed his name naked and alone without the corporate name or corporate officer designation, he was binding himself individually. However, we need not decide this issue, as the trial court failed to find that the note should be reformed, and consequently oral testimony cannot be used to interpret the parties' intentions.

562

We conclude that the plaintiff's objection to parol evidence to vary and explain the terms of the unambiguous promissory note should have been sustained.

Reversed and remanded, for the purpose of entering judgment in accordance with this opinion.

FARRIS and JAMES, JJ., concur.

Reconsideration denied October 25, 1979.

Review granted by Supreme Court January 18, 1980.